[No. 33241. Department One. November 17, 1955.]

DON FLEMING, *Respondent,* v. BRUCE BROWNFIELD *et al., Defendants,* UNITED STATES OF AMERICA, *Appellant.*[1]

*William B. Bantz* and *William M. Tugman,* for appellant.

*Ringhoffer & Ringhoffer,* for respondent.

[1]Reported in 290 P. (2d) 993.

WEAVER, J.—This case presents a problem of priority between a mechanic's and materialman's lien and a tax lien of the United States of America. The Federal lien is based upon unpaid taxes due under the Federal insurance contributions act (26 U. S. C. 1952 ed. §§ 1400-1432) and unremitted withholding taxes. 26 U. S. C. 1952 ed. § 3661.

Between June 22, 1953, and July 29, 1953, plaintiff furnished labor and materials for the construction of a house at the request of defendant Bruce Brownfield.

September 18, 1953, plaintiff filed in the office of the county auditor a claim of lien in the sum of $2,184 against the real property. This lien was filed pursuant to RCW 60.04.060.

October 6, 1953, the United States filed in the office of the county auditor "Notice of Federal Tax Lien Under Internal Revenue Laws," No. 26,587, for "Withholding—FICA Taxes" in the sum of $1,136.01.

November 27, 1953, the government filed another lien, No. 28,016, for $313.70, covering an additional tax period.

Plaintiff commenced this action to foreclose his lien.

The government appeals from the trial court's decree ordering the real property sold and the proceeds, after payment of the cost of sale, applied first to the satisfaction of plaintiff's lien for labor and materials, and then to the satisfaction of the liens of the United States.

Appellant urges the superiority of its liens upon two theories: one, that it is entitled to priority under the provisions of the internal revenue code (26 U. S. C. 1952 ed. §§ 3670-3672); and two, that it is entitled to priority by reason of the statutory provision which governs debts owed to the United States by an insolvent. (31 U. S. C. 1952 ed. § 191.)

Since appellant's liens filed in the county auditor's office state that they are made "pursuant to the provisions of Sections 3670, 3671, and 3672 of the Internal Revenue Code . . .," we direct our attention to a consideration of these statutes.

26 U. S. C. 1952 ed. § 3670. Property subject to lien:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

26 U. S. C. 1952 ed. § 3671. Period of lien:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

26 U. S. C. 1952 ed. § 3672: ·

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector."

Since we find it necessary to refer to 31 U. S. C. 1952 ed. § 191 in this opinion, we set forth the pertinent portion of it.

"Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied."

The lien provided by § 3670, *supra*, covers only tax debts; it arises regardless of the solvency of the taxpayer; and it attaches at the time the assessment list is received by the collector.

Although § 3670 creates a lien in favor of the government, it does not confer priority on this lien. As related to other liens, its priority is determined by the principle that:

" 'The first in time is the first in right.' " *United States v. New Britain,* 347 U. S. 81, 98 L. Ed. 520, 74 S. Ct. 367 (1954).

Copies of appellant's liens were admitted in evidence by stipulation of counsel that they were

" . . . copies of the liens filed [in the office of the county auditor] by the United States Government on the dates shown in the lower left hand corner of each one of them, one being filed November 27, 1953 and the other being filed October 6, 1953."

We find no evidence in the record before us to support appellant's claim that the assessment upon which its lien No. 26,587 is based was received by the collector on September 3, 1953. Hence, appellant's lien is not entitled to priority by reason of § 3671, *supra*. However, since it was necessary that the collector receive the assessment list from the commissioner before it could be filed in the office of the county auditor, we will accept the date of filing as the date the list was received. See 26 U. S. C. 1952 ed. §§ 3640-3641.

Patently, respondent is not a "mortagee, pledgee, purchaser, or judgment creditor," as enumerated in § 3672, *supra*. Since his lien was filed in the county auditor's office eighteen days before appellant's lien was filed, its priority depends upon the principle of "first in time," provided it meets the criteria of those liens entitled to priority.

■ Our characterization of the lien for labor and materials, as specific and perfected at a given time, is controlling in all matters in which the laws of this state are paramount. However, a different rule applies when a Federal statute is involved. Although the supreme court of the United States was speaking of the priority of a lien claimed by reason of the statutory provision which governs debts owed to the government by an insolvent (31 U. S. C. 1952 ed. § 191), it said:

"It is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority given the claims of the United States by an act of Congress. If the priority of the United States is ever to be displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supersede a long-standing Congressional declaration of priority." *United States v. Waddill, Holland & Flinn*, 323 U. S. 353, 89 L. Ed. 294, 65 S. Ct. 304 (1945).

Prior to 1950, numerous Federal lower courts had denied the supremacy of Federal tax liens under § 3670 over antedating rival liens for county taxes, contingent right of set off, equitable lien or right of set off, garnishments, local tax

liens, landlord's lien, attachment liens, wage assignments, and the like. In at least three cases, mechanics' and materialmen's liens which had been recorded pursuant to state statutes were held to have priority over antedating Federal liens under § 3670, *supra. In re Taylorcraft Aviation Corp.*, 168 F. (2d) 808 (C. C. A. 6th; 1948); *In re Caswell Constr. Co.*, 13 F. (2d) 667 (N. D. N. Y.; 1926); *The River Queen*, 8 F. (2d) 426 (E. D. Va.; 1925).

In the *Taylorcraft* case, *supra,* the circuit court recognized that the security had been enhanced by labor and material for which the lien was claimed; and that it would be in the nature of unjust enrichment to permit its defeat by a lien subsequent in time.

In *United States v. Security Trust & Sav. Bank.*, 340 U. S. 47, 95 L. Ed. 53, 71 S. Ct. 111 (1950), the creditor's attachment lien and subsequent judgment straddled the date of the Federal tax lien. Under the California statute, the creditor's attachment gave rise to a lien on the realty, effective when recorded. The California court had previously held that a subsequent judgment lien merged with the attachment lien and related back to the time when the attachment lien was recorded.

No question of insolvency being involved, the lien asserted by the government stemmed from 26 U. S. C. 1946 ed. §§ 3670-3672, quoted *supra.*

The court relied upon a decision of the supreme court of California, wherein it is stated:

"The attaching creditor obtains only a potential right or a contingent lien." *Puissegur v. Yarbrough,* 29 Cal. (2d) 409, 412, 175 P. (2d) 830 (1946).

The United States supreme court said:

"Examination of the California statute shows that the above is an apt description. The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or in-

choate—merely a *lis pendens* notice that a right to perfect a lien exists.

"Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison did not have a judgment lien. He had a mere '*caveat* of a more perfect lien to come.' *New York v. Maclay,* 288 U. S. 290, 294."

After quoting the statutes we are considering, the court continued:

"In cases involving a kindred matter, *i. e.,* the federal priority under R. S. § 3466 [31 U. S. C. 1952 ed. § 191], it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. *Illinois v. Campbell, supra,* 374 [329 U. S. 362, 97 L. Ed. 1076, 73 S. Ct. 705 (1946)]. If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here. Accordingly, we hold that the tax liens of the United States are superior to the inchoate attachment lien of Morrison."

Thus, the distinction between "specific and perfected" liens and "inchoate" liens, which has long been used in the interpretation and application of 31 U. S. C. 1952 ed. § 191 (concerning priority of government liens against assets of insolvents), was engrafted upon the interpretation of 26 U. S. C. 1952 ed. §§ 3670-3672, although these statutes do not subordinate or even mention inchoate lien.

The *Security Trust* case, *supra,* immediately became the subject of distinguishment. Many inferior courts began to hold that the various liens held to be prior to Federal tax liens before the decision in the *Security Trust* case were, in fact, perfected and choate under state statutes, and hence, still had priority over the tax lien of the government. This is illustrated by *Petition of Gilbert Associates,* 97 N. H. 411, 90 A. (2d) 499 (1952); *United States v. Liverpool & London & Globe Ins. Co.,* 209 F. (2d) 684 (C. A. 5th; 1953) (Texas

garnishment lien held prior to Federal tax lien); and *United States v. Acri,* 109 F. Supp. 943 (N. D. Ohio 1952), affirmed *per curiam* 209 F. (2d) 258 (C. A. 6th; 1953) (Ohio attachment lien held prior to Federal tax lien).

In *United States v. Gilbert Associates,* 345 U. S. 361, 97 L. Ed. 1071, 73 S. Ct. 701 (1953), the court reversed the supreme court of New Hampshire. Although the New Hampshire court had designated the town's taxes "in the nature of a judgment" under the laws of the state, the supreme court rejected this designation when considered in the light of the Federal question involved. It denied that the town's taxes were entitled to priority pursuant to 26 U. S. C. 1946 ed. § 3672.

Since the debtor was insolvent, the court based the priority of the Federal tax lien upon 31 U. S. C. 1946 ed. § 191, saying:

"Where the lien of the Town and that of the Federal Government are both general, and the taxpayer is insolvent, § 3466 [31 U. S. C. 1946 ed. § 191] clearly awards priority to the United States."

In *United States v. New Britain,* 347 U. S. 81, 98 L. Ed. 520, 74 S. Ct. 367 (1954), the supreme court stated that

" . . . certain of the City's tax and water-rent liens apparently attached to the specific property and became choate prior to the attachment of the federal tax liens."

This is apparently the first time that the supreme court has found or recognized the existence of specific and perfected liens.

The *New Britain* case, *supra,* however, does not represent a reversal of reasoning nor a shift in the *rationale* of *United States v. Security Trust & Sav. Bank, supra.*

Although the supreme court of Ohio has designated the state attachment process as "an execution in advance" (see *Rempe & Son v. Ravens,* 68 Ohio 113, 67 N. E. 282 (1903)), the United States supreme court reversed the *Acri* case, *supra,* upon the authority of *United States v. Security Trust & Sav. Bank, supra,* holding that a tax lien of the United States is entitled to priority over an Ohio attachment lien when the Federal tax lien was recorded

subsequent to the date of the attachment lien, but prior to the date the attaching creditor obtained judgment. *United States v. Acri,* 348 U. S. 211, 99 L. Ed. 193, 75 S. Ct. 239 (1955).

*United States v. Liverpool & London & Globe Ins. Co.,* *supra,* shared the same fate. The United States supreme court reversed the circuit court and held that Federal tax liens are entitled to priority over a Texas garnishment lien when the tax liens are recorded subsequent to the date of the garnishment lien, but prior to the date the garnishor obtained judgment. *United States v. Liverpool & London & Globe Ins. Co.,* 348 U. S. 215, 99 L. Ed. 195, 75 S. Ct. 247 (1955).

*United States v. Scovil,* 348 U. S. 218, 99 L. Ed. 197, 75 S. Ct. 244 (1955). Although the debtor was insolvent, the supreme court found it unnecessary to pass upon the effect of 31 U. S. C. 1952 ed. § 191. Under 26 U. S. C. 1952 ed. §§ 3670-3672, it held that a landlord's lien under the statutes of South Carolina "was only a caveat of a more perfect lien to come, as we have so often held in other cases."

Our statute requires that one claiming a lien for labor and materials commence an action to enforce the lien within eight calendar months after the notice of lien is filed. RCW 60.04.100. In such an action, the owner of the property may, and often does, dispute the amount of the lien. In the instant case, the recorded lien is for $2,184. After trial, the lien was reduced to $2,124.

■ In so far as it is necessary in this case to determine the priority of our statutory mechanic's and materialman's lien (authorized by RCW 60.04.060) and a subsequent attaching lien of the Federal government (under 26 U. S. C. 1952 ed. §§ 3670-3672 and 31 U. S. C. 1952 ed. § 191), we are constrained to hold, in view of the authorities we have discussed, that respondent's lien was not specific and perfected under Federal law at the time Federal tax lien No. 26,587 attached to the property, and hence, is inferior to it.

■ On trial of this action, the government conceded that respondent's lien was superior to Federal tax lien No. 28,016.

A party, including the United States, cannot urge error on a ruling or judgment made with express or implied consent. *United States v. Star Constr. Co.,* 186 F. (2d) 666 (C. A. 10th; 1951).

In view of the negotiations between the internal revenue agent and the debtor concerning his failure to pay his taxes, we believe the evidence is sufficient to warrant a finding that demand for payment of taxes was made.

Our attention is directed to several decisions of this court: *In re Carroll Constr. Co.,* 41 Wn. (2d) 317, 249 P. (2d) 234 (1952); *Spokane Merchants' Ass'n v. State,* 15 Wn. (2d) 186, 130 P. (2d) 373 (1942); *Palace Fish & Oyster Co. v. Bean,* 32 Wn. (2d) 56, 200 P. (2d) 753 (1948); and *Ernst v. Guarantee Millwork,* 200 Wash. 195, 93 P. (2d) 404 (1939).

In the *Carroll* case, we held that a lien for taxes on personal property was specific and perfected when the director of the state's employment security department caused notice of lien to be filed with the county auditor and took priority over a tax lien of the Federal government which attached subsequently. The United States supreme court granted a writ of *certiorari* and vacated the judgment. The case was remanded "for consideration in the light of *United States v. Gilbert Associates,* 345 U. S. 361." *United States v. Carroll Constr. Co.,* 346 U. S. 802, 98 L. Ed. 333, 74 S. Ct. 22 (1953).

With one exception, the other cases involve priority between various state statutory liens for taxes and the Federal tax lien. The instant case involves only the priority of the mechanic's and materialman's lien under RCW 60.04.060. Our decision is limited thereto.

In the *Ernst* case, *supra,* an individual was held to have a specific lien for labor under Rem. Rev. Stat., §§ 1149 and 1153 (*cf.* RCW 60.32.010; RCW 60.32.050). This court held that she was entitled to priority over the government's lien for taxes under U. S. Rev. Stat. § 3466 (31 U. S. C. 1952 ed. § 191). In view of the recent decisions of the United States supreme court which we have analyzed, the *Ernst* case may no longer be authority for this principle.

That portion of the decree granting priority to the lien of respondent over lien No. 26,587 of the United States is reversed. Upon foreclosure of the liens and sale of the property, the proceeds therefrom shall be applied first, to costs of selling said property; second, to payment of that portion of appellant's judgment against the debtor represented by lien No. 26,587; third, to payment of respondent's judgment; and fourth, to payment of that portion of appellant's judgment against the debtor represented by lien No. 28,016.

It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.